Gregory. Craig **SCOTT** and Travis Jackson, Plaintiffs,

v.

**CITY OF DALLAS**, Norman Cates, Duane Boy, and William Carmack, Defendants.

No. 3:93–CV–0130–X.

United States District Court, N.D. Texas, Dallas Division.

Feb. 20, 1995.

Kenneth W. Byford, Byford & Associates, P.C., Dallas, TX, for plaintiffs.

Sangeeta S. Kuruppillai, Asst. City Atty., Dallas, TX, for defendants.

## *MEMORANDUM OPINION AND ORDER*

KENDALL, District Judge.

Before the Court are: Defendants' Motion for Summary Judgment and Brief, filed March 11, 1994; Plaintiffs' Response and Brief in Support, filed May 13, 1994; and Defendants' Reply, filed May 31, 1994. After carefully considering the motion, briefs, supporting evidentiary submissions, and applicable law, the Court determines that no issues of material fact exist with respect to the issues raised in the motion for summary judgment. Therefore, Defendants' Motion for Summary Judgment is GRANTED.

### BACKGROUND

Plaintiffs Gregory Craig Scott ("Scott") and Travis Jackson ("Jackson") were employed by the Defendant City of Dallas ("the City") beginning August 26, 1991, when they were hired as trainee police officers with the Dallas Police Department ("DPD"), until

their termination on March 2, 1992. On the night of January 24 and early morning of January 25, 1992, Scott and Jackson went to the Wall Street Club in Dallas with Daniel Morgan ("Morgan") and Cornell Watts ("Watts"). Before leaving the club with Scott and Jackson, Morgan allegedly robbed at knifepoint another man, Shawn Blosser ("Blosser"), who was sitting in a car in the parking lot of another club across the street. Blosser wrote down the license plate number of the vehicle in which Morgan entered and left the premises.

The individual defendants in this case, Detective Duane Boy ("Boy"), Detective William Carmack ("Carmack") and Sergeant Norman Cates ("Cates"), were the Dallas police officers assigned to work the Blosser case. Blosser came in to the police station on January 28, 1992 to discuss the robbery and give a statement. Boy traced the license plate number that Blosser had written down to Jackson. On January 29, 1992 Boy, Carmack and Cates went to the police academy to speak to Jackson and Scott. After reading Jackson his rights, Boy discussed the robbery with Jackson and learned that Scott and Jackson had been in Morgan's company on the night of the robbery. Jackson mentioned that a photograph had been taken that night, and went to get it at the detective's request. The photograph was of Scott, Jackson, Morgan and Watts. After reading Scott his rights, Carmack spoke with Scott in another room. Both Jackson and Scott denied any knowledge of the robbery.

On January 30, 1992, an officer went to Blosser's residence to show him photographs for a photo lineup. Morgan came in voluntarily to the police station and gave a written statement. On January 31, 1992, Scott and Jackson were asked to come to the Northeast substation for questioning. Cates and Carmack interviewed each of them individually, and Scott and Jackson gave written statements. Cates also asked them if they would take a polygraph examination, and both men agreed. On February 5, 1992, Scott and Jackson each took a polygraph examination, which was repeated when each was told he had showed deception on questions about

whether he had seen Morgan commit the robbery.

On February 6, 1992, Scott and Jackson were placed on administrative leave. On February 10, 1992, Cates filed a complaint with the DPD's Internal Affairs Division ("IAD") regarding Scott and Jackson which alleged that "on January 25, 1992 Officer Jackson and Officer Scott observed a robbery and failed to report it." The next day, IAD gave Scott and Jackson written notice of the allegations against them. On February 12, 1992, Scott and Jackson submitted written statements in response to IAD. After IAD's investigation was concluded, Scott and Jackson were notified on March 3, 1992 that they were being terminated effective March 2, 1992 for violating Rule X, Section 9 of the Civil Service Board Code of Rules and Regulations for failing to successfully complete their six month probationary period. On March 9, 1992 Scott and Jackson were arrested on charges of aggravated robbery. The grand jury declined to indict Scott and Jackson on March 19, 1992.

Plaintiffs filed this lawsuit in January 1993. Their Second Amended Complaint alleges causes of action pursuant to 42 U.S.C. § 1983 and the United States Constitution, for defamation, for intentional infliction of emotional distress, and for malicious prosecution. Defendants have moved for summary judgment on all of Plaintiffs' causes of action.

## SUMMARY JUDGMENT

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. Fed.R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law will identify which facts are material. *Id.* at 248, 106 S.Ct. at 2510. The nonmovant is not required to respond to the motion until the movant properly supports his motion

with competent evidence. *Russ v. International Paper Co.*, 943 F.2d 589, 591 (5th Cir.1991), *cert. denied*, 503 U.S. 987, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir.1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "[m]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. The existence of a mere scintilla of evidence will not suffice. *Id.* at 252, 106 S.Ct. at 2512. When the nonmoving party fails to make the requisite showing and the moving party has met its summary judgment burden, the movant is entitled to summary judgment. Fed. R.Civ.P. 56(c); *Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir.1992).

**Property Interest**

As terminated Trainee Police Officers, Plaintiffs Scott and Jackson assert that they have a cognizable property interest in their employment and they were denied due process. Under the Fourteenth Amendment, the government may not deprive any person of life, liberty or property without due process of law. U.S. Const. amend. XIV; *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir.1993). The nature of Plaintiffs' claim of property right must be determined with reference to Texas law. *Board of Re-*

*gents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir.1992).

If a plaintiff establishes a property interest in his employment, federal constitutional law determines whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir.1988). If there is no protected property interest, there is no process due, that is, the status is employment at will. *Board of Regents v. Roth*, 408 U.S. at 569, 92 S.Ct. at 2705. Public employees must demonstrate a property right founded on a "legitimate claim of entitlement" based on "mutually explicit understandings." *Id.* at 577, 92 S.Ct. at 2709.

Plaintiffs claim that because they were terminated more than six months after their hire date, they were no longer probationary employees. Plaintiffs misread the clear language of the applicable provisions of the Dallas Civil Service Board Rules and the Dallas City Charter. The relevant section discussing probation generally for city employees is found in Dallas City Charter Chapter XI, Section 11(c), which provides:

> *Initial probation.* Until an employee successfully completes probation required to be initially served after appointment or reappointment to city employment, the employee has no property right to his position and may not appeal a determination that he failed probation nor the subsequent termination of his employment with the city.

Unlike most city employees, police officers have two six-month periods of probation: one as a Trainee Police Officer, and one as a Probationary Police Officer. The provisions concerning probation for police officers specifically is found in the Code of Rules and Regulations of the Civil Service Board of the City of Dallas, Rule XIV, Section 4.A.(1)(a), which states:

> Probationary Police Officer: Employees who have successfully completed the training and qualification period as Trainee Police Officer shall be eligible for certification

and appointment to the class of Probationary Police Officer. ·

Plaintiffs were put on administrative leave and then terminated while still holding Trainee Police Officer status, before they had graduated from the police academy. They did not successfully complete the initial training and were never promoted to Probationary Police Officer status. Thus, they were still on probation when they were terminated.

As probationary employees, Plaintiffs could be terminated without cause and had no right of appeal. *Rosenstein v. City of Dallas, Tex.*, 901 F.2d 61, 64 (5th Cir.), *cert. denied*, 498 U.S. 855, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990). At most, Plaintiffs had a unilateral expectation of continued employment, which is insufficient to create a property interest. *Evans v. City of Dallas*, 861 F.2d 846, 850 (5th Cir.1988). The Court determines that Plaintiffs have failed to establish a property interest in their employment or that they were denied due process by the Defendants. Summary judgment is granted in favor of the Defendants on this claim.

### § 1983 Claims

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that some person, acting under state law, has deprived him of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). The City of Dallas can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where an official policy or custom causes a person to be deprived of a federally protected right. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The City cannot be sued under § 1983 for an injury inflicted solely by its employees or agents based on the theory of *respondeat superior*. *Id.; McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984) (en banc). The City may only be held liable for its own official policy, and not that of an individual official unless the City has given the official policymaking authority. *Bennett*

*v. City of Slidell*, 728 F.2d 762, 769 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

Plaintiffs claim that the Defendants violated their rights under the First, Fifth, Sixth, and Fourteenth Amendments by coercing them into submitting to polygraph examinations under threat of termination. Second Amended Complaint at 15–17. The summary judgment evidence demonstrates otherwise. The polygraph examinations were administered during the criminal investigation of the Blosser complaint, and *not* during the IAD investigation. Thus, the Plaintiffs' repeated citation to the General Orders of the DPD concerning polygraph examinations in the course of an IAD investigation is misplaced. Plaintiffs had the same right to refuse to take the polygraph exam as any other person being interviewed as part of a criminal investigation. Scott and Jackson each signed a form before the administration of the polygraph exam that stated "I ... voluntarily and without duress, coercion, unlawful influence or inducement, or promise of reward, clemency, or immunity, request an examination on the polygraph."

The Plaintiffs' own testimony in their depositions contradicts their claims of coercion. Scott testified that he had no problem with being asked to take the polygraph, and replied "No" when asked whether anyone told him that he would be disciplined or terminated if he did not take the polygraph exam. Jackson testified that he agreed to the polygraph exam, and that he never at any time told the detectives he did not want to take it.

Examining these constitutional claims individually, as to their First Amendment claim, Plaintiffs have not stated facts to establish that their speech was inhibited in any way by the Defendants, in the context of the polygraph examination or in any other way. The case cited by Plaintiffs in support of their claim, *Milonas v. Williams*, 691 F.2d 931 (10th Cir.1982), concerned a school for youths with behavioral problems that was enjoined from using a polygraph on the students, a situation completely inapposite to the case before this Court. Plaintiffs have also failed to show that the voluntary administration of

the polygraph examination violated their constitutional right to privacy.

█ Similarly, Plaintiffs have failed to state facts establishing that the Defendants violated their Fifth Amendment right against self-incrimination. Plaintiffs do not claim, and there is no evidence demonstrating, that they asserted their Fifth Amendment rights but were refused them by the City. Even if the Defendants had forced Plaintiffs to choose between a polygraph or discharge (and there is no evidence of this shown), such a choice is not a violation of an employee's Fifth Amendment rights. *Gulden v. McCorkle,* 680 F.2d 1070 (5th Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *Arrington v. County of Dallas,* 970 F.2d 1441, 1446 (5th Cir.1992).

As for the Sixth Amendment claim, Plaintiffs have once again failed to state any facts demonstrating that their rights were violated by the Defendants. There is no evidence that the Plaintiffs ever invoked their right to counsel during the criminal investigation. The form that Scott and Jackson each signed before the polygraph exam stated that he understood that "I have the right to have a lawyer present to advise me prior to any questions and during my questioning" and that "If I am unable to employ a lawyer, I have the right to have a lawyer appointed to counsel with me prior to and during my questioning." There is simply no evidence that the Defendants violated a right to counsel which the Plaintiffs never chose to invoke. Finally, Plaintiffs have stated only conclusory allegations concerning a Fourteenth Amendment claim of illegal arrest based on the coerced polygraph exam, but have stated no facts which support such a claim. The Court grants summary judgment in favor of the Defendants on all of the Plaintiffs' claims under § 1983.

**Qualified Immunity**

█ The individual Defendants have qualified immunity from liability for money damages if their conduct did not violate clearly-established law of which a reasonable official would have been aware. *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Williams v. Texas Tech Univ. Health Sci-*

*ences Center,* 6 F.3d 290, 293 (5th Cir.1993), *cert. denied sub nom. Williams v. Saltzstein,* — U.S. —, 114 S.Ct. 1301, 127 L.Ed.2d 652 (1994). If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990); *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir.1994). The burden is on the plaintiff to overcome a defendant's defense of qualified immunity. *Burns–Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994). The plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief he seeks. *Id.* The plaintiff's complaint must state with factual detail and particularity the bases for the claim which necessarily includes why the defendant official cannot successfully maintain the defense of immunity. *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985).

█ Plaintiffs claim that the individual Defendants coerced them into submitting to the polygraph examination, manufactured evidence against them, investigated them without probable cause, and arrested them without probable cause. The Court has already determined that the claim of coercion of the polygraph exams fails. In addition, the Court holds that Plaintiffs have failed to state a claim for interference with a contract of employment. As for the other claims, the Court agrees that they involve clearly established constitutional rights, but holds that the Plaintiffs have failed to show that these officers' actions were not objectively reasonable. *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir.1994). Plaintiffs have submitted only conclusory allegations in support of these claims, and have not plead any facts sufficient to defeat qualified immunity concerning them.

█ The summary judgment evidence shows that a complaint was filed, that the complainant gave the investigating detectives a license number of a car in which the alleged perpetrator left the scene, that the license plate belonged to Jackson's car, that

Scott and Jackson were with the alleged perpetrator on the night of the crime, and that the detectives methodically continued their investigation of Scott and Jackson from there. The complainant identified the alleged perpetrator in a photo lineup shown to him by another officer, and not any of the individual Defendants. The polygraph report indicated deception as to two questions by both of the Plaintiffs. The fact that the grand jury eventually no-billed the Plaintiffs does not, without more, establish that the investigation was in violation of the Plaintiffs' civil rights. There is no competent summary judgment evidence to indicate that the individual Defendants' actions were not objectively reasonable. Plaintiffs repeatedly confuse *opinions* and *conclusions* with *facts*. Conclusory allegations are insufficient to establish an issue of material fact or to counter the summary judgment evidence presented by the Defendants. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

**State Law Claims**

■ Finally, Plaintiffs' Second Amended Complaint asserts pendent state law causes of action against the individual Defendants for defamation, intentional infliction of emotional distress, and malicious prosecution while acting outside the scope of their employment as governmental employees. The Court is bound to apply the law of Texas in determining whether the Defendants' motion for summary judgment as to these claims should be granted. *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1142 (5th Cir.1991).

■ "Slander is a defamatory statement orally communicated or published to a third person without legal excuse." *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, no writ). Although Plaintiffs have characterized their claims against the individual Defendants as being outside the scope of their authority as governmental employees, Plaintiffs not explained *how* any of the complained of actions were outside the scope of their authority as investigating officers. The Plaintiffs make conclusory allegations that "the officers failed to investigate the crimes sufficiently" and that "the officers misrepresented the facts of the Blosser investigation to the Court to procure an arrest warrant for the Plaintiffs" but offer opinions rather than facts to support such allegations. Plaintiffs apparently believe that their status as Trainee Police Officers exempts them from investigation of possible criminal activity. This is not the law, and the Court grants summary judgment for the Defendants as to the defamation claim.

■ Plaintiffs have asserted a cause of action for intentional infliction of emotional distress. The Supreme Court of Texas has recently placed its imprimatur on the intentional infliction cause of action, which had been recognized for some time by courts of appeals. In *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993), the court adopted the tort of intentional infliction of emotional distress as set out in § 46(1) of the Restatement (Second) of Torts. Under Texas law, to prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish that the defendant acted intentionally or recklessly; that the conduct was "extreme and outrageous"; that the actions of the defendant caused the plaintiff emotional distress; and, that the emotional distress suffered by the plaintiff was severe. *Twyman* at 621; *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989).

■ Defendants continue to make conclusory allegations unsupported by facts. Plaintiffs claim that the individual Defendants "knew or should have known that the allegations of criminal activity against the Plaintiffs were baseless." The summary judgment evidence does not reveal any conduct by the individual Defendants other than the methodical investigation that they were required to conduct. Plaintiffs have failed to produce sufficient evidence even to create a fact issue as to whether the individual Defendants acted intentionally or recklessly or their conduct was extreme and outrageous. The Court grants summary judgment in favor of the Defendants as to the claim of intentional infliction of emotional distress.

■ Plaintiffs' final state law claim is for malicious prosecution. Under Texas law, a plaintiff must establish that the defendant

(1) acted with malice, (2) without probable cause, (3) caused a criminal prosecution of the plaintiff, (4) which terminated in acquittal and resulted in damage. *McHenry v. Tom Thumb Page Drug Stores*, 696 S.W.2d 664, 665 (Tex.App.—Dallas 1985, writ dism'd); *Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288 (Tex.1994). The Plaintiffs cannot point even to a scintilla of evidence to demonstrate that the individual Defendants acted with malice. The Court holds that the Plaintiffs have failed to produce competent summary judgment evidence supporting the necessary elements of a claim for malicious prosecution or even to raise an issue of material fact as to those elements. The Court grants summary judgment in favor of the Defendants as to the claim of malicious prosecution.

### CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment is GRANTED, and all of the Plaintiffs' claims against the Defendants shall be dismissed.

SO ORDERED.