Kenneth Wayne **KELLOUGH**

v.

Fernando **BERTRAND**, Former Police Officer, Andy Nino, Police Officer, Robert Garza, Former Police Officer, and City of Galveston, Texas.

No. CIV.A. G–97–639.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 25, 1998.

---

David A. Jameson, Galveston, TX, for David Jameson.

Alex A. Castetter, Stuckey and Garrigan, Nacogdoches, TX, for Kenneth Wayne Kellough.

William Scott Helfand, Magenheim Bateman Robinson, Houston, TX, for The City of Galveston Texas, Fernando Bertrand.

## *ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiff in this case alleges that Galveston police officers unlawfully arrested him and used excessive force in the course of that arrest, resulting in physical and emotional injury. Plaintiff filed this action asserting claims of unlawful arrest and excessive force against both the City and the individual officers in violation of 42 U.S.C. § 1983, and in addition alleges state-law claims involving assault and battery and intentional infliction of emotional distress. Now before the Court is Defendant's Motion for Summary Judgment of August 31, 1998. For the reasons that follow, Defendant's Motion is **GRANTED IN PART, DENIED IN PART.**

### I. FACTUAL SUMMARY

At the time of the events forming the basis of this suit, Plaintiff Kenneth Wayne Kellough was a medical student at the Universi-

ty of Texas Medical Branch at Galveston ("UTMB").[1] Early on the morning of January 21, 1996, Plaintiff was driving home from the UTMB campus when he was stopped by Defendant Bertrand. Within moments of the stop, several other police vehicles arrived at the scene. When Plaintiff stepped out of his vehicle, Defendant Bertrand ordered him to lie face-down on the ground. Instead of complying immediately, Plaintiff asked the officers what he had done. At that point, Defendant Nino stepped behind Plaintiff and employed a leg sweep technique to knock him to the ground. Plaintiff alleges that Defendant Nino and other officers then got on Plaintiff's back, forced his hands behind his back, and cuffed him. During this portion of the arrest, Plaintiff alleges, Defendant Bertrand struck him in the arm with his flashlight. After he was handcuffed, the officers informed Plaintiff that he was suspected of committing an armed robbery earlier that evening.

Plaintiff was transported for identification to the scene of the robbery, where one of the victims promptly told the officers that Plaintiff was not among those involved. Despite the victim's statement, Defendant Bertrand placed Plaintiff under arrest for resisting arrest and retaliation.[2] Plaintiff was taken to jail, where he spent the remainder of the night. A grand jury subsequently refused to indict Plaintiff on the charges.

Since the time of the arrest, Plaintiff alleges, he has received medical attention for back pain and has suffered mental anguish that necessitated counseling. He now seeks compensatory and punitive damages against the individual Defendants and the City of Galveston on claims of excessive force and unlawful arrest under 42 U.S.C. § 1983 and claims of assault and battery and intentional infliction of emotional distress under Texas law.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See id. at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. See id. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Dixon v. State Farm Fire & Casualty Co., 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513.

Several facts are in dispute. Notably, Plaintiff and Defendants differ on whether Plaintiff took a confrontational attitude toward the officers at the initial stop, prompting Defendants' aggressive takedown; whether Defendant Bertrand actually struck Plaintiff during the arrest; and whether Plaintiff actually threatened Defendant Bertrand on the drive to the scene of the robbery. However, only disputes over facts that

---

1. Plaintiff, who has since graduated from Medical School, was an officer with the Houston Police Department before embarking upon his medical education.

2. Plaintiff maintains that he made no threat toward any of the officers. Among the defendants, only Officer Bertrand, against whom Plaintiff's threat was alleged to have been directed, has testified to having heard Plaintiff make any physical threats.

might affect the outcome of the lawsuit under the governing law will preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Id.* at 248, 106 S.Ct. at 2510. Therefore, it is necessary to examine "the governing law" applicable to this case to determine whether Plaintiff has carried his burden.

## III. FEDERAL § 1983 CLAIMS AND THE INDIVIDUAL DEFENDANTS

In their Motion for Summary Judgment, individual Defendants assert qualified immunity as a defense against Plaintiff's claims under § 1983. The Court must address the question of qualified immunity as a threshold issue because its resolution determines Defendants' immunity from suit, that is, their ability to avoid a trial altogether, rather than mere immunity from damages. *See Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir.1993).

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). When sued in his individual capacity, a governmental employee is entitled to a presumption of qualified immunity from suit. *See Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990). To overcome this presumption, a plaintiff has the burden to prove that no reasonable, similarly situated official could have considered the conduct of the government officials to be lawful, under the circumstances known to him at the time. *See Anderson,* 483 U.S. at 640–41, 107 S.Ct. at 3039–40; *Burns–Toole v. Byrne,* 11 F.3d 1270, 1274 (5th Cir.1994). The reasonableness inquiry of the official's conduct is measured with reference to the law as it existed at the time of the conduct in question. *See King v. Chide,* 974 F.2d 653, 657 (5th Cir. 1992). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel,* 918 F.2d at 1183.

The Fifth Circuit has recognized that "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir.1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)). The Fifth Circuit has also developed a two-step process for the examination of a claim of qualified immunity. The first inquiry is whether Plaintiff has alleged a violation of a clearly established constitutional right. *See Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The next step is to judge the reasonableness of the official's behavior. *See id.* at 657. When the Court has a clear picture of what occurred during an incident giving rise to a qualified immunity defense, the "reasonableness" question becomes one of law. *See Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993)(acknowledging that qualified immunity should normally be determined by the Court).

### A. Qualified Immunity Bars Plaintiff's Claim of Excessive Force

Established law clearly provides that Plaintiff has a Fourth Amendment right to be free from the use of excessive force by police. "[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Court must take care not to substitute its judgment for that of the reasonable officer on the scene, however. *See id.* at 396, 109 S.Ct. at 1872. The Court's calculus of reasonableness must include allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396–97, 109 S.Ct. at 1872. Thus, the question facing this Court is whether the use of force by officers Bertrand, Nino, and Garza was objectively reasonable in light of the circumstances con-

fronting them on the street on the morning of January 21, 1996.

Applying these standards, the Court concludes that the individual Defendants' use of force in the arrest was objectively reasonable. It is factually undisputed that the suspected perpetrator of an armed robbery was abroad in the area at that time; while it is regrettable that Defendants stopped a man who matched the suspect's description in only the very loosest way, the circumstances surrounding the stop demanded great caution on their part. The factual dispute to which Plaintiff points in support of his argument does not persuade the Court against finding Defendants' actions reasonable. Even accepting as true Plaintiff's allegation that he exited his vehicle in a nonthreatening manner, his refusal to follow Defendants' instructions to go to the ground would probably justify a reasonable officer's decision, in light of the circumstances, to employ some force to take him to the ground.

Plaintiff's allegation that he was struck by Officer Bertrand's flashlight is more troubling. However, Plaintiff acknowledged in his deposition that none of the officers struck him or employed any force whatsoever after he was handcuffed. Therefore, assessing the situation from the perspective of a reasonable officer on the scene, it appears that none of the actions Plaintiff has identified are so excessive in their violence that they must overcome Defendants' qualified immunity. Consequently, the individual Defendants are entitled to summary judgment on Plaintiff's claim of excessive force on the basis of qualified immunity. Each and all of such claims are **DISMISSED WITH PREJUDICE.**

*B. Plaintiff's Claim of Unlawful Arrest is not Barred by Qualified Immunity*

An individual has a clearly established right to be free from unlawful arrest. *Duckett v. City of Cedar Park,* 950 F.2d 272, 278 (5th Cir.1992). An arrest or detention may be unlawful if it is accomplished without due process of law as required by the United States Constitution. *Baker v. McCollan,* 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979). Police officers are thus required under the Fourth Amendment to make a determination of probable cause before making a custodial arrest. *Martin v. Thomas,* 973 F.2d 449, 453 (5th Cir.1992). An officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *Gladden v. Roach,* 864 F.2d 1196, 1199 (5th Cir.1989).

Here, Plaintiff asserts such a claim solely against Defendant Bertrand, who has not moved for dispositive relief. Plaintiff has created a fact issue on the question of whether Defendant Bertrand had probable cause to arrest him for resisting arrest and threatening retaliation. Despite the robbery victim's clear statement to Defendants that Plaintiff was not one of the men who robbed her, Defendant Bertrand made the decision to take Plaintiff into custody. Plaintiff has introduced evidence that he did not resist arrest at the scene of the original stop, but that he merely asked to be informed of what he had done before he went to the ground. Moreover, Plaintiff testified in his deposition that he made no physical threats against Officer Bertrand, testimony that is corroborated by that of Defendants Nino and Garza.

Taking Plaintiff's allegations as true for the purpose of determining Defendants' qualified immunity, the Court finds that no reasonable officer would conclude that Plaintiff's arrest, without any evidence of guilt, was consistent with his right to be free from unlawful arrest. The Court is troubled by the rather clear inference that Defendant Bertrand's arrest of Plaintiff was retaliatory and vindictive, a suspicion at least somewhat substantiated by a grand jury's subsequent refusal to indict Plaintiff on the charges for which he was hauled to jail. To say that police officers have qualified immunity to arrest an individual on trumped-up charges is beyond this Court's authority. Nor is this Court willing to say that a loose mouth or a bad attitude alone provides a legitimate basis for arrest. Therefore, Defendant Bertrand is not entitled to qualified immunity with regard to Plaintiff's § 1983 claim of unlawful arrest. By the same token, because several issues of fact material to this claim remain disputed, Defendant Bertrand is not entitled

to summary judgment on this claim, even had he moved for it.

Because Plaintiff's deposition testimony contains no evidence contradicting Defendants Garza and Nino's argument that they were not involved in Plaintiff's unlawful arrest, however, the Court finds that no issue of material fact exists with regard to their involvement. Therefore, individual Defendants Garza and Nino are entitled to summary judgment on Plaintiff's claim of unlawful arrest. Such claims against those Defendants are **DISMISSED WITH PREJUDICE.**

### IV. STATE LAW CLAIMS AND THE INDIVIDUAL DEFENDANTS

■ In addition to his § 1983 claims, Plaintiff has asserted state law claims of assault and battery and intentional infliction of emotional distress against the individual Defendants. Texas law provides government employees official immunity from suits arising from the good faith performance of their discretionary duties where they are acting within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Hudson v. Vasquez,* 941 S.W.2d 334, 336 (Tex.App.—Corpus Christi 1997, n.w.h.) While the Texas doctrine of official immunity is distinct from the federal doctrine of qualified immunity, *see Victory v. Bills,* 897 S.W.2d 506, 508 n. 1 (Tex.App.—El Paso 1995, no writ), the state doctrine differs in no ways that would provide an outcome in this case different than that provided by the federal doctrine.

■ To enjoy the benefit of official immunity with respect to an action he is alleged to have taken, an officer must have been performing his discretionary duties in good faith while acting within the scope of his authority. *Id.* at 508. Here, Plaintiff has not argued that Defendants were doing anything other than performing discretionary duties within the scope of their authority when they restrained him and placed him under arrest. However, he has made allegations consistent with a theory that Defendants were not acting in good faith. The test of good faith is similar to the qualified immunity doctrine's test of reasonableness: Defen-

dants must show that a reasonably prudent officer might have believed that force was necessary. *See id.* at 509; *see also Chambers,* 883 S.W.2d at 656–57. Defendants have made a credible showing that their use of force was objectively reasonable. Plaintiff, meanwhile, has made no showing to the contrary. Consequently, the individual Defendants are entitled to summary judgment on Plaintiff's state law claim of assault and battery. Each and all of those claims are **DISMISSED WITH PREJUDICE.**

Similarly, Defendants' official immunity protects them from suit on Plaintiff's state law claim of intentional infliction of emotional distress. Even if official immunity did not apply in this context, however, Plaintiff's claim would fail as a matter of law.

■ The intentional infliction of emotional distress cause of action has enjoyed recognition by the Texas courts for some time now. In *Twyman v. Twyman,* 855 S.W.2d 619 (Tex.1993), the Texas Supreme Court adopted the tort as set out in § 46(1) of the Restatement (Second) of Torts. Under Texas law, a plaintiff seeking to prevail on such a claim must establish that the defendant acted intentionally or recklessly, that the conduct was "extreme and outrageous"; that the actions of the defendant caused the plaintiff emotional distress; and that the emotional distress suffered by the plaintiff was severe. *Twyman,* 855 S.W.2d at 621; *see also Scott v. City of Dallas,* 876 F.Supp. 852, 860 (N.D.Tex.1995).

■ The standard for establishing liability on an intentional infliction claim is a demanding one. Liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman,* 855 S.W.2d at 621; *see also Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1145 (5th Cir.1991). Plaintiff has presented no serious allegation that the conduct of Defendants remotely rises to this level. The facts alleged by Plaintiff with regard to the initial stop, even if taken as wholly true,

while not reflecting well upon at least one of the officers involved, describe at most the heat generated by a stressful and potentially dangerous situation. Plaintiff's allegations concerning his subsequent arrest similarly fail to strike the chord of atrocity contemplated in *Twyman.* Accordingly, the individual Defendants are entitled to summary judgment on Plaintiff's state law claim of intentional infliction of emotional distress. Each and all of such claims are **DISMISSED WITH PREJUDICE.**

## V. FEDERAL § 1983 CLAIMS AGAINST THE CITY OF GALVESTON

Plaintiff also brings § 1983 claims against the City of Galveston. It is well established that a municipality may be liable for the adoption of a policy or custom that leads to a constitutional deprivation. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1987); *Burns v. City of Galveston,* 905 F.2d 100, 102 (5th Cir.1990); *Morris v. City of Alvin,* 950 F.Supp. 804, 806 (S.D.Tex.1997) (Kent, J.)(declaring that § 1983 does not "require as a constitutional minimum that a municipality train its officers to medically screen each pretrial detainee so that officers will unerringly detect suicidal tendencies."). The demonstration of a failure to train, or improper hiring, retention, and supervision, may be sufficient to establish such a policy or custom. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)(opining that "inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact"); *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997)(declaring that "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality . . . the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). The actions of the municipality before and *after* the event in question shed light on the actual policy or custom in existence.

The Court notes that establishing liability under § 1983 for failure to properly train police officers, or for improper hiring, supervision, and retention of those officers, is a difficult task. At trial, Plaintiff must show evidence of a custom or policy attributable to the City which caused Plaintiff injury. *See Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984)(en banc). More than one instance of constitutional injury is normally required to demonstrate such a policy or custom. *See Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir.1997). The City is not necessarily liable just because it employs an alleged tortfeasor. *See Brown,* 520 U.S. at ——, 117 S.Ct. at 1385. When considering a Motion for Summary Judgment, however, the Court looks at the facts alleged in a light most favorable to the nonmovant. *See Partridge v. Two Unknown Police Officers of Houston,* 791 F.2d 1182, 1185–86 (5th Cir. 1986). Summary judgment is granted when a reasonable fact-finder, after considering the facts, could only decide a particular issue one way. *See Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

### A. The City of Galveston is Entitled to Summary Judgment on § 1983 Excessive Force

With regard to Plaintiff's claim of excessive force, the Court finds that Plaintiff has not presented a material issue of fact sufficient to overcome summary judgment. To present a valid § 1983 excessive force claim, a plaintiff must offer evidence of an injury that resulted directly and solely from a use of force clearly excessive to the need for force. *See Harper v. Harris County, Texas,* 21 F.3d 597, 600 (5th Cir.1994). Moreover, the degree of excessiveness must have been "objectively unreasonable." *See id.* A police officer is justified in using force in connection with an arrest, not only where he is the subject of an attack, but also where the actions of the individual being arrested give the officer cause to believe that there is a threat of serious physical harm. *See Young v. City of Killeen, Texas,* 775 F.2d 1349, 1353 (5th Cir.1985). Indeed, the Fifth Circuit has stated: "[N]o right is guaranteed

by federal law that one would be free from circumstances where he will be endangered *by the misinterpretation of his acts.*" *See id.* (emphasis added). Moreover, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). Finally, it is well settled that the amount of force that is constitutionally permissible must be judged by the context in which that force is deployed. *See Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir.1996); *see generally Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

The reasonableness analysis of Defendants' actions for the purpose of determining the merits of Plaintiff's claim is in all relevant respects identical to the qualified immunity analysis.[3] Here, Plaintiff has failed to present evidence that would show that the force used by the officers was objectively unreasonable. Thus, the Court is precluded from reaching the issue of municipal liability on Plaintiff's excessive force claim, as matter of both fact and law. Consequently, such claim against the City Defendant is **DISMISSED WITH PREJUDICE.**

*B. The City of Galveston is Entitled to Summary Judgment on § 1983 Unlawful Arrest*

On his unlawful arrest claim against Defendant Bertrand, Plaintiff has introduced sufficient evidence to justify a finding that his arrest was unreasonable and he has consequently overcome that individual Defendant's claim of qualified immunity. However, Plaintiff has not offered even remotely enough evidence to overcome summary judgment in favor of Defendant City of Galveston.

Plaintiff argues that the City of Galveston failed to provide both adequate training in

proper arrest techniques and probable cause for its officers. The law draws a distinction between lack of police training and inadequate police training, however. In some circumstances, a complete lack of training may support § 1983 municipal liability, *see Brown,* 520 U.S. at ——, 117 S.Ct. at 1390, as may inadequate training, *see City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). But the Supreme Court has distinguished between training programs that prove inadequate in occasional circumstances and programs that are inadequate with regard to "tasks that particular officers must perform." *See id.* at 390, 109 S.Ct. at 1206. Basing liability on inadequate training where there is no municipal awareness of or acquiescence in a pattern of constitutional violations would potentially transform almost any encounter resulting in an injury into a valid § 1983 claim. *See id.* at 391, 109 S.Ct. at 1206. Defendants have introduced evidence that the City of Galveston's training in arrest procedure falls within the standard suggested by the State of Texas; Plaintiff, meanwhile, has offered nothing but conclusory allegations that the City's training is vaguely insufficient.

Plaintiff has offered some evidence in support of his argument that the City of Galveston failed to adequately supervise Officer Bertrand. But Plaintiff's evidence on the issue of the City's supervision also falls woefully short of the summary judgment barrier. The fact that Defendant Bertrand had contact with his superior only once every other night does not support Plaintiff's allegations that he was improperly supervised or that more frequent contact would have prevented Plaintiff's unlawful arrest. Thus, Defendant City of Galveston is entitled to summary judgment on Plaintiff's claim of unlawful arrest. Such claim is **DISMISSED WITH PREJUDICE.**

*VI. STATE LAW CLAIMS AGAINST THE CITY OF GALVESTON*

A Texas municipality cannot be held liable for causes of action brought under Texas common law unless the Texas Legislature has expressly waived that city's govern-

---

**3.** *See* Section III.A., *supra.*

mental immunity. *See University of Texas Medical Branch v. York,* 871 S.W.2d 175, 177 (Tex.1994). This immunity has only been waived as to claims brought pursuant to the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem.Code Ann. § 101.001–101.109 (Vernon 1997). *See Lowe v. Texas Tech. University,* 540 S.W.2d 297, 298–99 (Tex. 1976). Thus, Plaintiff's common-law causes of action against the City in this case are not legally cognizable unless they are clearly waived by the TTCA. *See York,* 871 S.W.2d at 177; *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980).

██ Plaintiff alleges assault and battery and intentional infliction of emotional distress—both intentional torts under Texas law. The TTCA provides that a municipality cannot be liable for any claims "arising out of assault, battery, false imprisonment, or any intentional tort . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). A review of the summary judgment evidence submitted by Plaintiff reveals that his intentional tort allegations are not waived by the TTCA. Therefore, these claims are absolutely barred by sovereign immunity. *See City of San Antonio v. Dunn,* 796 S.W.2d 258, 261 (Tex. App.—San Antonio 1990, writ denied)(holding that no waiver of municipal liability existed under the TTCA where plaintiff's claims arose out of allegations of intentional torts, including false arrest and excessive force); *Townsend v. Memorial Medical Center,* 529 S.W.2d 264, 266–67 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *accord Jones v. Houston Independent School District,* 979 F.2d 1004, 1007 (5th Cir.1992). Defendant City of Galveston is entitled to summary judgment on Plaintiff's state law claims. Each and all of such claims are **DISMISSED WITH PREJUDICE.**

## VII. CONCLUSION

The Court finds that Plaintiff has produced sufficient evidence to overcome individual Defendant Bertrand's qualified immunity solely with regard to Plaintiff's claim of unlawful arrest. This sole remaining claim remains set for trial on October 26, 1998. Without commenting on the merits of the

claim or defenses asserted, this Court will examine them again at that time.

For the reasons set forth above, Plaintiff's claims of excessive force, assault and battery, and intentional infliction of emotional distress against individual Defendants Bertrand, Nino, and Garza are **DISMISSED WITH PREJUDICE.** Plaintiff's claims of excessive force, unlawful arrest, assault and battery, and intentional infliction of emotional distress against Defendant City of Galveston are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. In due course, the Court will enter a Final Judgment on all claims dismissed herein.

**IT IS SO ORDERED.**