PER CURIAM: *
This is a Section 1988 suit brought by Will Aguilar, a motorcyclist who was injured in a traffic stop. He claims two deputies in the Williamson County Sheriffs Office, Daniel Robertson and Michael Baxter, used excessive force to arrest him. The district court denied the deputies’ motions that had sought summary judgment based on qualified immunity. The deputies appeal. We REVERSE as to Deputy Robertson, AFFIRM as to Deputy Baxter, and REMAND.
FACTS
On April 9, 2009, Will Aguilar was riding his motorcycle on a rural road in Williamson County, Texas. His affidavit states that as he rode around a turn, he saw Deputies Daniel Robertson and Michael Baxter standing in the middle of the road waving for him to stop. Aguilar states that upon seeing the deputies, he used his brakes and had almost stopped when he reached Deputy Robertson.
The details of what Aguilar and the deputies each did is disputed, though whether those disputes are material is a question we will address later. At this point, it is enough to say that Aguilar was knocked from his motorcycle to the pavement and suffered injuries. He was transported to a hospital and was diagnosed with a broken clavicle.
Aguilar was charged with aggravated assault of an officer with a deadly weapon (i.e., the motorcycle). The case was presented to a grand jury, which did not indict him.
Aguilar brought this suit against Williamson County and the two deputies, Robertson and Baxter, in the United States District Court for the Western District of Texas, relying on 42 U.S.C. § 1983. Aguilar alleged the deputies used excessive force in stopping him for speeding. Robertson and Baxter filed a motion for summary judgment on the basis of qualified immunity, which the district court denied. Robertson and Baxter appealed.
During the pendency of this appeal, the county moved for summary judgment. The district court denied the motion as premature, as that court is awaiting the ruling of this court on the appeal.
DISCUSSION
A district court’s order denying qualified immunity is a collateral order that is immediately appealable “to the extent that it turns on a question of law rather than a factual dispute.” Elizondo v. Green, 671 F.3d 506, 509 (5th Cir.2012). Qualified immunity should be granted to a deputy unless, first, the deputy’s “conduct would, *446 as a matter of law, be objectively unreasonable in light of clearly established law,” and, second, at least “a genuine issue of fact exists regarding whether the [deputy] did, in fact, engage in such conduct.” Cantrell v. City of Murphy, 666 F.3d 911, 921 (5th Cir.2012) (quotation marks omitted). This court’s review is limited to whether the deputies’ conduct was “objectively unreasonable in light of clearly established law.” Id. at 922.
Ordinarily, this court reviews a district court’s denial of summary judgment de novo. Kinney v. Weaver, 367 F.Bd 337, 347 (5th Cir.2004). In an interlocutory appeal, though, “we lack the power to review the district court’s decision that a genuine factual dispute exists.” Id. at 348. Therefore, we “consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment.” Id.
Aguilar’s claim is that these deputies used excessive force to arrest him. The claim is analyzed under the Fourth Amendment’s reasonableness standard, which requires “two overlapping objective reasonableness inquiries.” Lytle v. Bexar Cnty., Tex., 560 F.3d 404, 410 (5th Cir. 2009) (quotation marks omitted). First, a constitutional violation occurs if the plaintiff demonstrates (1) an injury (2) which “resulted directly and only from the use of force that was excessive to the need” and (3) the force used was objectively unreasonable. Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir.2008). Then, “we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable.” Lytle, 560 F.3d at 410. Aguilar was injured as a result of the arrest, but the deputies claim the force was not excessive and no clearly established constitutional duty existed to refrain from the actions they took to stop and detain Aguilar.
We first determine what must be accepted at this point as the relevant facts. Aguilar’s version of events was set out in his affidavit. After seeing the deputies, Aguilar began to slow his motorcycle. He estimates he was still traveling one to three miles per hour and not yet completely stopped when “Defendant Robertson then hit [Aguilar’s] left shoulder with his left hand, fracturing [Aguilar’s] clavicle in [his] left shoulder. It was obvious to [Aguilar] that it was an intentional strike on his part on [Aguilar’s] shoulder.”
Robertson’s version, most of which is not disputed by Aguilar, is basically consistent. Robertson stated that Aguilar was traveling at 65 miles per hour in a 40 miles-per-hour zone. Aguilar had an unobstructed view of the deputies, who were both wearing uniforms. Baxter and Robertson began waving their arms to cause Aguilar to stop. As Aguilar approached, Robertson took a step into the path of the motorcycle and put his hands out. Robertson agrees that Aguilar was braking hard, but contends Aguilar was not stopping fast enough. Robertson continued waving his arms while stepping out of the way. When Aguilar passed, Robertson alleges his “left hand caught the [driver’s] left shoulder.” This caused Robertson to “spin around and hit the ground causing abrasions to [his] right hand, pain in [his] right ankle and [a] rip in [his] pants under the right knee.”
As to Baxter, Aguilar stated that a few seconds after Robertson hit Aguilar on the shoulder, Baxter tackled Aguilar, knocking him off the motorcycle onto the ground, causing further injury to his shoulder. Aguilar stated Baxter took out his gun and hit him in the front of the head with it, then poked him with it on his face shield, *447 and kicked him in the leg. Aguilar maintains that he did not resist arrest or take actions that would indicate he intended to flee. He states he kept his hands in the air to indicate he was not a threat to the deputies.
Baxter’s account in his affidavit differs somewhat. He alleges that Aguilar slowed and rolled past Baxter after coming into contact with Robertson. Baxter shouted at Aguilar to stop. Baxter continued to give these orders after Robertson fell, and the motorcycle rolled slowly forward with Aguilar still astride it. Baxter believed Aguilar was going to flee because of Aguilar’s failure to comply with the order to stop, and because Aguilar was looking in Baxter’s direction and also at the motorcycle. At that point, Baxter decided to push Aguilar, causing him and the motorcycle to fall over. Aguilar fell on his left side. Baxter put his firearm to Aguilar’s helmet’s face shield while trying to grab his jacket. By this time, Robertson had gotten up and he “grabbed [Aguilar’s] left hand [and] rolle[d] him over allowing [Aguilar] to be cuffed by Deputy Robertson.”
For each deputy, the question is whether his actions were objectively unreasonable due to a clearly established constitutional duty not to use the kind of physical force he employed, and whether that duty was established at the time of the incident. “The defendant’s acts are held to be objectively reasonable unless all reasonable officials in the defendant’s circumstances would have then known that the defendant’s conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.” Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 457 (5th Cir.2001).
The right to use some degree of force to effectuate an arrest or investigatory stop is clearly established. Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The deputies assert the law lacked clarity, meaning that every reasonable officer in this situation would not understand that the chosen force was of a degree that violated a constitutional right. In determining whether an officer’s conduct violated a constitutional right, courts examine whether the right was clearly established “in light of the specific context of the case, not as a broad general proposition.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Despite the lack of a precedent with the exact facts, the law can be clearly established from factually distinguishable cases “so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.” Lytle, 560 F.3d at 417.
The deputies point to three cases in which the degree of force was held to be reasonable under the circumstances. First, a district court determined that an officer pointing a gun at the plaintiff for 20 seconds in the process of serving an arrest warrant was not objectively unreasonable. Greene v. Knight, 564 F.Supp.2d 604, 61-13 (N.D.Tex.2008). Second, the Second Circuit held it was not unreasonable under the circumstances for an officer to point his gun at the plaintiffs head when the plaintiff was struggling with two other officers. Davis v. Rodriguez, 364 F.3d 424, 427, 431 (2d Cir.2004). Finally, a district court held that a leg sweep technique employed by an officer to knock the plaintiff down was not unreasonable. Kellough v. Bertrand, 22 F.Supp.2d 602, 608 (S.D.Tex.1998). In Kellough, an armed robbery had recently occurred in the area; the officers suspected the plaintiff might be involved, and he refused to follow the officers’ instructions. Id. We conclude that it was clearly established that some degree of force was permissible in effectuating an *448 arrest where the suspect fails to comply with an officer’s orders.
In contrast, cases in which the degree of force used violated a constitutional right generally involved fairly significant acts of force. For example, we have held that an officer pushing an arrestee’s head into the window of a car resulting in injuries to her face, teeth, and jaw was not objectively reasonable, even if she was initially resisting. Bush, 513 F.3d at 496, 501. The court reasoned that though the officer had a viable argument for using some force when the plaintiff initially resisted arrest, according to the plaintiff at least part of the officer’s actions occurred after he had control of her. Id. at Additionally, we have affirmed the denial of summary judgment based on qualified immunity where a police officer broke the plaintiffs window with his flashlight when she refused to exit the vehicle, dragged her out of the car, and threw her against the window. Deville v. Marcantel, 567 F.3d 156, 162 (5th Cir.2009). The plaintiff had been pulled over for exceeding the speed limit by 10 miles per hour and testified there was no indication she might flee. Id. at 167. The plaintiff alleged she only passively resisted the officers by refusing to get out of her vehicle until her husband arrived. Id.
We now examine the evidence as to each deputy’s conduct.

A. Deputy Robertson

Some level of force may be used by a deputy to stop a violation of the law. Graham, 490 U.S. at 396, 109 S.Ct. 1865. Aguilar asserts his certainty that Robertson intended to hit him on the shoulder. Even if such an intent would make Robertson’s conduct more questionable, and we are not sure it does, intent does not matter under qualified immunity analysis. We examine the objective reasonableness of the deputy’s conduct. Cantrell, 666 F.3d at 921. It was objectively reasonable for Robertson to use some force to detain Aguilar for speeding. These are the relevant facts alleged by Aguilar as viewed from the perspective of a reasonable officer: Aguilar was traveling at a high rate of speed; Robertson was in the middle of the road waving Aguilar down; Robertson could see Aguilar braking from at least 20 feet away; and Aguilar was still moving when he reached Robertson.
Permissible force depends on “the [1] severity of the crime at issue, [2] whether the suspect posed a threat to the officer’s safety, and [3] whether the suspect was resisting arrest or attempting to flee.” Deville, 567 F.3d at 169.
As to the first element, both Robertson and Baxter stated that Aguilar was traveling 65 miles per hour in a 40 miles per hour zone. Aguilar does not assert otherwise. Stopping someone for speeding might not warrant the same amount of force as in Davis, where the officer saw the plaintiff struggling with other officers, or in Kellough, where a robbery suspect was in the area. Davis, 364 F.3d at 427; Kellough, 22 F.Supp.2d at 606. Similarly, the force used in Greene while serving a warrant is distinguishable because that kind of situation could escalate quickly. Greene, 564 F.Supp.2d at 613. The severity of the violation here is between that of a speeding violation for traveling 10 miles per hour over the limit and that of serving a warrant.
Next, the potential threat posed to the deputy weighs in Robertson’s favor. Aguilar posed a threat because he was still moving and traveling towards Robertson. Like serving a warrant, the situation could have become more dangerous. Recognizing Aguilar was slowing down, Robertson had stepped in front of the motorcycle and was in its path — a dangerous position even if the motorcycle was traveling slowly.
*449 Finally, whether Aguilar was resisting arrest or attempting to flee is disputed. The deputies were gesturing for him to stop, and Aguilar insists he was trying to comply. Aguilar’s version of events is that he was still moving on his motorcycle when Robertson hit him on the shoulder. He admits two deputies were in the middle of the road waving for him to stop. Robertson was at least close enough to Aguilar to strike him, and Aguilar was still moving despite his close proximity to the deputy. We And no basis to hold that every reasonable officer would know at the time of this incident that hitting a motorcycle rider on the shoulder who had so far not stopped despite being ordered to do so, and despite being immediately adjacent to the deputy on the moving motorcycle, would have violated the motorcycle rider’s constitutional rights. Between fending off the approaching rider, and assuring he stops as opposed to picking up speed as soon as he passed the deputies, the striking of a rider on the shoulder was not objectively unreasonable.
The relevant precedents in which qualified immunity was denied do not suggest otherwise. Unlike in Bush, Robertson was not already in control of Aguilar when he struck him. Unlike in Deville, Aguilar was not in a stopped vehicle, he could have fled, and his traffic violation was at least somewhat more severe — 25 miles per hour over the speed limit as opposed to 10. Further, the amount of force used by Robertson was of a lesser degree than in De-ville.
We conclude that not every reasonable official in Robertson’s circumstances would have known this conduct violated the Constitution. We reverse the denial of qualified immunity as to Robertson and remand to the district court for entry of judgment dismissing him from the suit.

B. Deputy Baxter

Baxter contends he committed no constitutional violation because he did not cause Aguilar’s shoulder injury. Instead, he argues that it was Robertson who caused that injury. Baxter also contends he had no clearly established constitutional duty to refrain from using force in stopping Aguilar and his actions were objectively reasonable.
To succeed on an excessive-force claim, Aguilar must demonstrate that he “suffered at least some form of injury” from the defendant’s actions that is more than de minimis. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir.2001) (quotation marks omitted). The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case. Williams v. Bramer, 180 F.3d 699, 703-04 (5th Cir.1999).
Aguilar’s affidavit indicates that Baxter’s actions caused injury to his left shoulder. Though Aguilar’s affidavit states that Robertson’s contact with his left shoulder fractured his clavicle, he also states that his left shoulder was further injured when Baxter knocked him off his motorcycle onto the ground. Tackling the driver of a stopped motorcycle onto the ground is a significant amount of force. Aguilar’s statements that this caused further injury is sufficient to establish “some injury” under these circumstances for purposes of denying qualified immunity on summary judgment. See Williams, 180 F.3d at 704.
Baxter next argues the district court erred in denying his motion for summary judgment on the grounds of qualified immunity because he did not violate a clearly established constitutional right. Under Aguilar’s version of the facts, he had a right to be free from being tackled by Baxter once he had stopped and was not resisting the deputies. We acknowledge *450 here that Baxter has a different version of events, particularly as to whether Aguilar was ignoring his commands and was potentially going to drive away.
As already discussed, there is not established law regarding the reasonable use of force in the detention of a motorcycle driver by deputies on foot. Nonetheless, the law is clear that once the plaintiff stops resisting or is in the deputy’s control, the permissible degree of force lessens. See Bush, 513 F.3d at 502. In Bush, the court reasoned that the force used after the plaintiff ceased resisting was excessive. Id. at 501. Similarly, according to Aguilar’s version of the facts, he was stopped when Baxter tackled him. Aguilar contends that the deputies did not make any oral commands before Baxter knocked him off the motorcycle. Crediting Aguilar’s version of the facts, Baxter tackled him off the motorcycle onto the ground, used his firearm to hit and poke Aguilar in the head and visor, and kicked him in the leg. Joining these allegations with Aguilar’s insistence that he was stopped, not ignoring commands, and was not resisting arrest, we conclude Baxter violated Aguilar’s constitutional rights.
We must now decide, when viewing the facts from Baxter’s perspective, if all reasonable officials in his situation would have known this conduct violated a constitutional right. We analyze the nature of the force used by Baxter under the same test we applied to Robertson’s actions. De-ville, 567 F.3d at 169. The crime is the same. Aguilar was traveling 25 miles per hour over the speed limit, which is significant but less so than being served with a warrant or resisting arrest. Whether Aguilar was attempting to flee and the potential threat to officer safety are different for Baxter than for Robertson. As in Deville, Aguilar asserts he was neither resisting nor threatening Baxter, and when Baxter knocked Aguilar off the motorcycle, pointed his firearm at him, and kicked him, the motorcycle was stopped. See Deville, 567 F.3d at 167.
By the time of Baxter’s actions, though, one more event had occurred, namely, Robertson had fallen to the pavement. Baxter saw that contact between Robertson’s hand and Aguilar’s shoulder is what caused the fall. That fact does not add to the level of acceptable force, though, because even Baxter’s affidavit does not state he believed Robertson had been knocked down because of Aguilar’s intentional act. Baxter said: “As the motorcycle passed Deputy Robertson, the rider’s left shoulder struck Deputy Robertson’s left hand causing him to spin around to his left 180 degrees and fall face down on the pavement.” There is some ambiguity, as Aguilar’s insistence about how slow he was going would not seemingly result in so violent a force on Robertson. Yet based on the evidence viewed in the light most favorable to Aguilar, there was no basis for Baxter to believe from Robertson’s fall that Aguilar was a threat.
All reasonable officers would have known in the circumstances of someone completely stopped on a motorcycle for speeding, who was not resisting arrest, who had neither committed nor threatened any crime besides the speeding, that tackling the rider and forcing him to the ground would violate a constitutional right. The actual evidence on remand might present a different picture, but it was proper to deny summary judgment as to Baxter.
We reverse the denial of qualified immunity as to Robertson, affirm the district court’s denial of summary judgment as to Baxter, and remand to the district court for proceedings consistent with this opinion.
*451 AFFIRMED in part, REVERSED in part, and REMANDED.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.