Dorian DAVIS, Plaintiff–Appellant–Cross–Appellee,

v.

Richard RODRIGUEZ, William Rivera, Troy Gordon & City of Hartford, Defendants–Appellees–Cross–Appellants,

Hartford Hospital, Defendant–Appellee,

Hartford Police Department & Debra Pachucki, Defendants.

No. 03–7207, 03–7255.

United States Court of Appeals, Second Circuit.

Argued: Oct. 27, 2003.

Decided: April 14, 2004.

Earle Giovanniello, New Haven, CT, for Plaintiff–Appellant–Cross–Appellee.

Ralph W. Johnson III (James J. Szerejko, on the brief), Halloran & Sage LLP, Hartford, CT, for Defendants–Appellees–Cross–Appellants.

Stephen V. Manning, O'Brien, Tanski & Young, LLP, Hartford, CT, for Defendant–Appellee.

Before: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiff Dorian Davis appeals from a judgment of the United States District Court for the District of Connecticut (Peter C. Dorsey, J.) in favor of defendants in plaintiff's suit under 42 U.S.C. § 1983. Davis principally alleged in his suit that Hartford police officers Richard Rodriguez, William Rivera and Troy Gordon violated his rights under the First, Fourth and Eighth Amendments when they used excessive force to illegally seize and search him. Davis also alleged a claim against the City of Hartford based on the same incident. Davis also claimed that Hartford Hospital had been negligent in failing to detect and remove a bullet apparently lodged in his leg during his encounter with the police. The district court allowed only one of Davis's various claims—the alleged use of excessive force in arresting him—to go to the jury, which returned a verdict for defendants.

On appeal, Davis challenges the court's decision to grant summary judgment in favor of Gordon on the § 1983 claims and Hartford Hospital on the negligence claim. Davis further challenges the court's decision granting judgment as a matter of law to Rodriguez and Rivera on the illegal search and seizure claims. Finally, on the excessive force claim, Davis challenges two of the court's evidentiary rulings at trial

and its jury charge. We affirm in part and reverse in part and, for reasons set forth below, vacate the judgment and remand for a new trial on Davis's illegal seizure and excessive force claims against Rodriguez and Rivera.[1]

## I. Background

### A. Davis's Encounter with the Police

This case arises out of two conflicting versions of what happened at the corner of Capen and Martin Streets in Hartford, Connecticut in the late evening of December 23, 1997. Davis testified to his version of events at trial. According to Davis, he and a friend were innocently walking down the street past a group of people when Rodriguez, a Hartford police officer, ordered Davis to approach his cruiser. As Davis approached, Rodriguez grabbed him and pushed him up against the car. Rodriguez showed Davis a gun and a bag of drugs and asked, "Whose shit is this?" Davis told Rodriguez that they did not belong to him. Rodriguez then struck Davis repeatedly. Davis attempted to run away, but Rodriguez threw him to the ground. Davis heard a gunshot, but did not realize that he had been shot. Officer Rivera arrived on the scene, and he and Rodriguez began hitting, kicking and macing Davis. Davis did not resist, instead curling up into a fetal position on the ground. Officer Gordon arrived and pointed a shotgun at Davis's head, telling him to turn over. Davis was handcuffed, his feet were tied, and he was put in a police cruiser where he was maced again. Davis's testimony was largely corroborated at trial by his friend.

Officers Rodriguez and Rivera presented a starkly different story in their testimony at trial. Rodriguez testified that while on patrol that evening, he saw a sizable group of people congregating at the high-crime corner of Capen and Martin Streets. From his cruiser, Rodriguez ordered the crowd to disperse. Most of the people did, but Davis refused, responding "fuck you, fuck the police ... I own this block." Davis, who may have been under the influence of drugs, was acting erratically, and Rodriguez decided to arrest him. Rodriguez testified that he did not have or show Davis a bag of drugs or a gun. He tried to put Davis's hands on the cruiser's trunk to perform a pat down, but Davis kept resisting. Rodriguez also believed that Davis was trying to take something from Davis's side and used his hands to stop him. Davis removed Rodriguez's nightstick from his belt, but Rodriguez was able to knock it away. As Rivera arrived on the scene, the officers heard a gunshot. Rodriguez threw Davis to the ground and maced him in an effort to protect himself and Rivera. Davis continued to struggle. Only after Gordon arrived and pointed a shotgun at Davis's head were the officers able to subdue Davis. Rivera told a similar story, adding that he saw a silver gun in Davis's hand and a plastic object fall from Davis's jacket. Rivera testified that a .32 caliber gun and a plastic container containing cocaine and marijuana were eventually recovered from the scene of the struggle. Once in the police cruiser, Davis continued to struggle, kicking and breaking one of the windows.

1. Although defendants City of Hartford, Rodriguez, Rivera and Gordon filed a notice of cross-appeal, they have done so solely to argue, as an "alternate ground" for affirmance, that they should have been granted judgment as a matter of law on the excessive force claim. Such cross-appeal is unnecessary, and we dismiss it as improvidently filed. *See* *generally Great American Audio Corp. v. Metacom, Inc.,* 938 F.2d 16, 19 (2d Cir.1991) (per curiam) (prevailing party is entitled to urge affirmance on any basis submitted to the district court and supported by the record, including a basis rejected by the court; but the prevailing party is not entitled to cross-appeal).

### B. Davis's Treatment at Hartford Hospital

At 1:29 a.m. on the morning of December 24, 1997, after taking Davis to the police station house, the police brought him to the Emergency Department at Hartford Hospital (the Hospital). The nurse on duty testified that Davis refused to give his name, was spitting, agitated and calling for Allah. Davis appeared to be intoxicated. After being placed in four-point restraints and sedated, Davis received a series of tests including routine lab work, a complete blood count, a urine drug screen, a CT scan, an abdominal x-ray and an electrocardiogram. Davis tested positive for marijuana and had an elevated blood alcohol level. The only injuries noted by the examining doctor were "abrasion and soft tissue swelling" on the right forehead. Davis did not mention, nor did anyone discover, the bullet wound in Davis's leg. At 5:20 a.m., Davis was discharged into the custody of the Hartford police. Davis was apparently "able to ambulate with some difficulty, [and] was arousable in answering questions."

At 4:40 p.m. on December 25, 1997, Davis was brought back to the Emergency Department with complaints of rib pain, cervical spine pain and left-hand numbness. Again, Davis did not mention, nor did any of the hospital staff discover, that he had been shot in the leg. Davis was discharged at about 10:15 p.m. with a diagnosis of bruised ribs. Almost two years later, in an out-patient elective procedure, the bullet and the capsule of tissue surrounding it were surgically removed from Davis's leg to be used as evidence in the criminal trial against him.[2]

### C. Proceedings in the District Court

#### 1. The complaint

Davis filed a complaint in this action in March 2000, amending it first in June 2000 and then again in February 2001. In the second amended complaint, Davis named Officers Rodriguez, Rivera and Gordon, the City of Hartford and the Hospital as defendants. Davis alleged that the officers had illegally arrested and searched him in violation of the Fourth Amendment, had inflicted cruel and unusual punishment upon him in violation of the Eighth Amendment and had violated his First Amendment right to freely associate and assemble. He also alleged that Hartford Police Department policies violated all three Amendments. Against the Hospital, Davis alleged negligence in failing to discover and remove the bullet lodged in his leg.

#### 2. Summary judgment

On August 13, 2002, the district court granted the Hospital's motion for summary judgment in the negligence action against it. The court held that Davis had failed to offer any expert evidence that the standard of care applicable to emergency room doctors would require removal of the bullet in his leg. Davis had presented expert evidence only that the applicable standard of care would have required detection of the bullet, not its removal, and thus failed to establish an essential element of his negligence claim.

On August 30, 2002, on motions for summary judgment by defendants, the court dismissed all claims against Gordon and the City and dismissed the First and Eighth Amendment claims against Rodriguez and Rivera.[3]

---

**2.** Davis was eventually charged with gun and drug possession, interfering with police and assault. Davis was acquitted of the gun and drug charges, and his conviction on the other charges was reversed by the Connecticut Supreme Court in *State v. Davis*, 261 Conn. 553,

804 A.2d 781 (2002). At the time of the civil trial in the instant case, Davis was awaiting retrial in the state court on the interference and assault charges.

**3.** The court's dismissal of Davis's First and Eighth Amendment claims against the officers

### 3. The Rule 50 motion

A jury trial on the remaining illegal seizure, illegal search and excessive force claims under § 1983 against Rodriguez and Rivera began in January 2003. Davis testified that he had not been doing anything wrong on the night of December 23, 1997 and that his arrest and beating were unjustified. After Davis finished presenting his case, defendants moved for judgment as a matter of law (JMOL) under Rule 50 of the Federal Rules of Civil Procedure. Defendants pointed out that Davis had not introduced evidence of the charges on which he initially had been arrested by Rodriguez. As a result of this omission, they argued, his case was deficient as a matter of law because he had thereby failed to show that there was no probable cause for the arrest. Davis tried in vain to persuade the court that he did not need to identify the charges on which he had been arrested where the police had not charged him for his pre-arrest conduct and had yet to identify the conduct that was the basis of Rodriguez's initial decision to arrest him.[4] More importantly, Davis asked the court for permission to reopen his case so that he could call Rodriguez to the stand and question him regarding the charges supporting Davis's arrest. The court rejected this request and dismissed the illegal seizure claim against Rodriguez and Rivera. Ruling from the bench, the court explained to the jury that it had

> determined that there is no evidence on which you could find that the defendant or defendants arrested the plaintiff on the basis of any particular charge and while there was testimony that he was arrested, there was no evidence as to what he was charged with, and the only

way that you could find that there was no probable cause for his being arrested, would be to have some basis to find what he was arrested for so that you could then decide whether there was probable cause for the elements of the charge on which he was arrested.

The court also dismissed Davis's illegal search claim, finding that Davis had presented no evidence that he had in fact been searched. The court allowed the trial to continue solely on Davis's excessive force claim against Rodriguez and Rivera.

### 4. The court's evidentiary ruling at trial

As the trial continued on the excessive force claim, Rodriguez testified for the defense. On cross-examination, Davis asked Rodriguez the charge on which he initially decided to arrest him. Defendants' attorney objected, arguing that the issue of false arrest had been dismissed from the case. Davis responded that the particular crime at issue was relevant in considering the reasonableness of the force used to effect arrest. The court sustained defendants' objection.

### 5. Jury instructions and verdict

As part of its charge to the jury on Davis's excessive force claim, the court told the jury: "You are further instructed that under the law one cannot resist arrest, whether or not ... it is legal or illegal." Davis objected, arguing that the court should have added: "The fact that a person is under arrest does not require that person to submit to egregiously unlawful police conduct during the course of the arrest." The court overruled the ob-

---

and his claim against the City of Hartford are not challenged on appeal.

**4.** That decision, as indicated above, was based upon Davis's conduct preceding the

alleged struggle that formed the basis for the charges eventually brought against Davis in the criminal proceeding in state court. See supra note 2.

jection. The jury found for defendants on the excessive force claim.

## II. Discussion

On appeal, plaintiff Davis argues that the court erred in granting summary judgment in favor of the Hospital and Officer Gordon. Davis also argues that the court erred in granting JMOL on his illegal search and seizure claims against Officers Rodriguez and Rivera and that there is no requirement that a plaintiff asserting a false arrest claim under § 1983 state the charge upon which he was arrested. Finally, Davis challenges two evidentiary rulings made at the trial of his excessive force claim and the court's instructions to the jury on that claim. We consider these arguments in turn.

### A. Summary Judgment for the Hospital

Davis argues that the court erred in granting summary judgment in favor of the Hospital on his negligence claim because (1) he did present the expert testimony necessary to support a claim of medical malpractice; and (2) even if he had not, Connecticut law did not require him to present expert testimony that a breach of the standard of care proximately caused him injury. We review the district court's grant of summary judgment de novo, drawing all factual inferences in favor of the non-moving party. *See Felix v. New York City Transit Auth.,* 324 F.3d 102, 104 (2d Cir.2003).

█ Under Connecticut law, a medical malpractice plaintiff carries the burden of establishing through expert medical testimony that: (1) the defendant was obligated to conform to a recognized standard of care; (2) the defendant deviated from that standard; and (3) the defendant's deviation from the standard of care proximately

caused the plaintiff's injuries. *See Law v. Camp,* 116 F.Supp.2d 295, 305–06, 307 (D.Conn.2000) (collecting Connecticut cases and discussing expert testimony requirement for medical malpractice claims). Generally, where the plaintiff has presented no expert evidence, the court must grant summary judgment in favor of the defendant. *See Guzze v. New Britain Gen. Hosp.,* 16 Conn.App. 480, 485, 547 A.2d 944 (1988).

█ In this case, Davis did present expert testimony regarding the standard of care that emergency room doctors must meet in examining a patient like Davis. According to Davis's expert, he should have been treated as a trauma patient and been given a complete head-to-toe, front and back examination. Davis's expert testified that the failure of the Emergency Department doctor to conduct such an examination and to detect the bullet wound, if there at the time,[5] constituted a breach of the standard of care.

In response, the Hospital correctly points out that the alleged injury in this case resulted not from the failure to detect the bullet wound, but instead from the failure to remove the bullet from Davis's leg. As the district court noted, Davis was thus required to show not only that the applicable standard required detection of the bullet wound, but also that the standard required removal of the bullet. Although the Hospital presented expert evidence that proper treatment of a bullet wound often militates against removing the bullet, Davis presented no expert evidence to the contrary. Davis did not present expert evidence regarding the standard of care for treatment of bullet wounds and thus could not establish that the bullet in his leg should have been removed.

---

**5.** Davis's expert expressed no opinion as to whether Davis had actually been shot on the

night of December 23, 1997.

Davis argues, however, that his malpractice claim falls within one of three exceptions to the general rule requiring expert evidence. In *Poulin v. Yasner*, 64 Conn. App. 730, 747, 781 A.2d 422 (2001), the court noted that no expert evidence is required "when the negligence is gross, when the medical condition is obvious and when the plaintiff's evidence of injury creates a probability so strong that a lay juror can form a reasonable belief." None of these exceptions is applicable to Davis's claim. The Hospital presented expert evidence suggesting that removing a bullet can often be more dangerous than leaving it in and that in Davis's case the proper treatment of his wound would have required leaving the bullet in his leg. According to the Hospital, Davis's failure to have the bullet removed for two years and his election to have it removed only when it became useful as evidence in his criminal trial support this view. The failure to remove the bullet can thus hardly be termed gross negligence, nor can it be said that proper treatment was obviously to remove the bullet or that this was within the common knowledge of a jury.

We agree with the district court that Davis failed to present the expert evidence necessary to support his negligence claim, and we affirm the grant of summary judgment to defendant the Hospital.

### B. Summary Judgment for Officer Gordon

"To prevail on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact, and that when any disputed facts are viewed in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Cowan v. Breen*, 352 F.3d 756, 760 (2d Cir.2003). Davis claims that the reasonableness of Gordon's actions was a genuine issue of material fact that should have been presented to a jury. Davis argues that a jury could have found that after Rodriguez and Rivera had subdued Davis, Gordon's actions were unnecessary and unreasonable and that by pointing his shotgun at Davis's head, Gordon subjected Davis to an illegal seizure and excessive force in violation of Davis's constitutional rights. We disagree. Taking the facts in the light most favorable to Davis, there is simply no evidence of any constitutional violation by Gordon.

■ To establish a claim of excessive force, "a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards." *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir.1990). It is clear that when Gordon arrived, the struggle between Rodriguez, Rivera and Davis was either still going on or just concluding. Regardless of how the struggle started or whether there had been wrongdoing by Rodriguez and Rivera, unless there were at that point significant (to Gordon) indications to the contrary, Gordon was entitled to rely on his fellow officers' determination that the arrest in process was lawful. *See Loria v. Gorman*, 306 F.3d 1271, 1288 (2d Cir.2002). Moreover, Davis alleges only that Gordon pointed his shotgun at Davis's head and ordered him to roll over. Under the circumstances as Gordon found them, we cannot say that a jury could have properly found his actions unreasonable. Accordingly, we affirm the district court's grant of summary judgment in favor of Gordon.

### C. JMOL on Davis's unconstitutional false arrest [6] claim

■ We review de novo a district court's decision granting a motion for JMOL. *Nadel v. Isaksson*, 321 F.3d 266,

---

6. In his complaint, Davis alleges an illegal seizure in violation of the Fourth Amendment.

272 (2d Cir.2003). We have held that "[j]udgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir.1998).

As an initial matter, we must consider whether the district court erred in rejecting Davis's request to reopen his case before ruling on defendants' Rule 50 motion with regard to the unconstitutional false arrest claim. We have noted that a motion for JMOL pursuant to Rule 50 is designed "to give the other party 'an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury.'" *Baskin v. Hawley,* 807 F.2d 1120, 1134 (2d Cir.1986) (quoting 5A Moore's Federal Practice para. 50.08, at 50–77 (2d ed.1986)); see also *Galdieri–Ambrosini,* 136 F.3d at 286 (explaining that same purpose underlies requirement that moving party articulate grounds on which JMOL is sought). As the Advisory Committee on the 1991 amendments explained, "[t]he purpose of this requirement [that a motion for judgment be made prior to the close of the trial] is to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment." Fed.R.Civ.P. 50 Advisory Committee Note (1991).

■ In this case, defendants moved for JMOL at the close of Davis's direct case. Defendants argued that by failing to identify the charge on which he had been arrested, Davis had failed to establish the

absence of probable cause, one of the essential elements of his unconstitutional false arrest claim. During the colloquy with the court, Davis was apparently surprised at this contention and disagreed with defendants' assessment of the law. Davis argued that under the circumstances presented here, where no charges had actually been filed regarding his pre-arrest conduct and where defendants had not as yet identified the charges for which Rodriguez had made the decision to arrest Davis, he had carried his burden of proof by testifying that he had not been doing anything wrong. Nevertheless, Davis requested permission to reopen his affirmative case and ask Officer Rodriguez what he "was arrested for."

Although Rule 50(a)(1) "authorizes the court to consider a motion for judgment as a matter of law as soon as a party has completed a presentation on a fact essential to that party's case[,] ... [i]n no event ... should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact." Id. Under the circumstances here, Davis should have been given an opportunity to reopen his case. We thus vacate the court's judgment in favor of defendants on the unconstitutional false arrest claim.

■ We must still consider whether Davis had to identify the charges upon which he was arrested in order to carry his burden of proving his § 1983 unconstitutional false arrest claim. This is apparently an issue of first impression for this court. Defendants argue that (1) under Connecticut law, a plaintiff claiming false

Although a seizure need not rise to the level of an arrest in order to be actionable under § 1983, *see Posr v. Doherty,* 944 F.2d 91, 97–99 (2d Cir.1991), Davis's claim seems to be properly understood and analyzed as one for

unconstitutional false arrest. Accordingly, Davis's illegal seizure claim will be described as a claim of unconstitutional false arrest in the remainder of this opinion.

arrest carries the burden of proving the absence of probable cause; and (2) the absence of probable cause can only be shown by looking at the particular charged crime and showing that under the circumstances, the police officers did not have probable cause to believe that the particular crime was taking place. Davis questions whether Connecticut law really requires such a showing and argues that if it does, Connecticut law is inconsistent with the Fourth Amendment and should not be applied to his § 1983 claim.

In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (applying New York false arrest law); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) (same); *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992) (same); *Raysor v. Port Auth.,* 768 F.2d 34, 39–40 (2d Cir. 1985) (same); *see also Doe v. Bridgeport Police Dep't,* 198 F.R.D. 325, 335–36 (D.Conn.2001) (applying Connecticut law).[7] In this case, the events in question took place in Connecticut, and Connecticut law does appear to place the overall burden of proving the absence of probable cause on the false arrest plaintiff. *See Beinhorn v. Saraceno,* 23 Conn.App. 487, 491, 582 A.2d 208 (1990); see also Doe, 198 F.R.D. at 335 (recognizing and citing Beinhorn). Even if we assume this overall burden of proof applies to Davis's case,[8] however, we do

---

**7.** It should be noted that we have apparently not fully articulated our reasoning in applying state false arrest law to § 1983 unconstitutional false arrest claims. We have observed in other contexts, however, that we often look to state and common law principles to determine the law applicable to § 1983 claims. *See, e.g., Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994) ("Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law."); Singer, 63 F.3d at 114 ("[T]he district court analyzed Singer's § 1983 malicious prosecution claim under substantive state law common law standards, in accordance with the generally applicable law of this Circuit."); *see also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ("One important assumption underlying the Court's decisions in this area [§ 1983 tort liability] is that members of the 42d Congress were familiar with common-law principles ... and that they likely intended these common-law principles to obtain, absent specific provisions to the contrary."); *Pouncey v. Ryan,* 396 F.Supp. 126, 127 (D.Conn.1975) ("Section 1983 is to be interpreted against the background of common law tort liability."). Applying state law also comports with 42 U.S.C. § 1988, pursuant to which jurisdiction over § 1983 claims:

shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same

into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C § 1988(a).

**8.** We note that there is a difference of opinion in the federal courts as to the burden of proof applicable to § 1983 unconstitutional false arrest claims. Not many of our sister circuits have addressed which side carries the burden regarding probable cause, and those that have are split. The Fifth and Eleventh Circuits have held that because one of the elements of an illegal seizure claim is the unreasonableness of the seizure, the burden falls on the plaintiff to prove that probable cause was absent. *Rankin v. Evans,* 133 F.3d 1425, 1436 (11th Cir.1998); *Crowder v. Sinyard,* 884 F.2d 804, 825–26 (5th Cir.1989). The Third and Tenth Circuits, on the other hand, have noted that probable cause is a common law defense to false arrest and have thus held or

not believe that Davis was required, as part of his direct case, to identify the charges on which he was arrested. As explained below, that issue involves not Davis's overall burden of proof but instead his burden of production. Although we cannot say whether on similar facts a Connecticut state court would require a plaintiff to produce evidence of the crime for which he was arrested in a false arrest case arising solely under state law, we do not believe that a federal court administering a § 1983 unconstitutional false claim should impose such a requirement.

The burden of proving the absence of probable cause under § 1983 should not include a blanket requirement that false arrest plaintiffs produce evidence of the charges upon which they were arrested. Defendants have cited no case creating such a requirement, and it would run counter to both logic and fairness. Under defendants' view of the law, someone arrested for no good reason at all on the whim of a police officer, which is what plaintiff suggests occurred here, would have no legal recourse if there were never any charges, formal or informal. On defendants' view, the plaintiff in such circumstances would be unable to prove false arrest. A police officer could immunize himself from suit simply by remaining silent or uninformative as to the reasons for the arrest.

Here, similarly, Davis was not charged with any pre-arrest crimes and defendant officers have not identified the reason, before the struggle began, for arresting him. It would have been either impossible or dishonest for Davis to produce the charges Rodriguez had in mind when he decided to arrest him. Davis did not have to identify those charges in order to survive the Rule 50 motion.

This does not eliminate (on the assumption we have made) Davis's overall burden of proving that the officers did not have probable cause to arrest him. "The term [burden of proof] encompasses two separate burdens of proof. One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true." 2 John W. Strong et al., McCormick on Evidence 425 (4th ed.1992). Davis still carries the burden of persuading the jury that he was doing nothing that could justify the police decision to arrest him before the struggle began. What is at issue here is not Davis's burden of persuasion, but his burden of production. Where a false arrest plaintiff has been charged with a

implied that a § 1983 defendant carries the burden of proving probable cause. *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir.1985); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir.1984) (citing the Supreme Court's holding in *Pierson v. Ray*, 386 U.S. 547, 556–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), that good faith and probable cause are defenses to false arrest). Cf. *Gilker v. Baker*, 576 F.2d 245, 246 (9th Cir.1978) (perhaps suggesting a burden shifting approach).

This specific question—whether the plaintiff or the defendant in a § 1983 unconstitutional false arrest case bears the overall burden of proof with regard to probable cause—has apparently not yet been squarely discussed and decided in this circuit, and our indirect comments on the burden of proof in such cases do not point conclusively in one direction or the other. Compare Raysor, 768 F.2d at 39–40 (assuming in a case alleging both a § 1983 false arrest claim and a New York state law false arrest claim that defendant bore the burden of proving "reasonable cause" as dictated by New York law), with *Ruggiero v. Krzeminski*, 928 F.2d 558, 562–63 (2d Cir. 1991) (assuming in a § 1983 warrantless search claim arising in Connecticut that plaintiff bore the burden of proving the absence of exceptions to the warrant requirement). Because we believe that Davis has met even the burden preferred by the Fifth and Eleventh Circuits, as explained in greater depth below, we need not decide here who ultimately bears this burden in § 1983 unconstitutional false arrest cases.

crime for which he was arrested, he must produce evidence directly rebutting that charge in order to carry his burden of production. This would also be the case where there were no formal charges but defendants' intended charge was identified during the plaintiff's affirmative case. In a case such as this one, however, where no charges were filed based on Davis's pre-arrest conduct[9] and where defendants have yet to identify the charges Rodriguez had in mind when he decided to arrest Davis for that conduct, Davis would satisfy his burden of production by testifying as to his conduct at the time the decision to arrest was made (just before Rodriguez called Davis over to his car) and that he had not been charged with a crime based upon that conduct. If, of course, defendants then identify an intended charge during their own case, the burden would shift back to the plaintiff to enter some evidence rebutting that charge. Cf. Gilker, 576 F.2d at 246. That did not happen here because the court granted JMOL at the end of Davis's case. Accordingly, we hold that the court erred in refusing to grant Davis permission to reopen and in granting JMOL to Rodriguez and Rivera. We thus order a new trial on Davis's claim of unconstitutional false arrest.

As noted in footnote 8, however, it remains an open question in this circuit whether the plaintiff or the defendant carries the ultimate burden of proof with regard to probable cause in a § 1983 unconstitutional false arrest case. The parties here have not adequately addressed whether state or federal law should determine the allocation of the burden of proof in cases such as this, nor have they ad-

dressed the proper burden to be applied if federal law trumps state law. Because the law on this issue remains unclear, the district court may choose to seek briefing from the parties on the applicable burden of proof before it formulates its instructions to the jury in a new trial.

**D. JMOL on Davis's illegal search claim**

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Although the boundaries of what is and what is not a search are not always clear, it is axiomatic that a plaintiff alleging an unreasonable search must produce some evidence that a search has actually taken place. Here, Davis testified at trial that he was not patted down, and Davis's counsel conceded that "there may[ ]be no direct evidence that Mr. Davis was searched." Because Davis produced no evidence that a search actually occurred, the court was correct in granting JMOL in favor of defendants. We affirm that decision.

**E. Preclusion of the questions to Rodriguez regarding the offense supporting the arrest**

■ Davis next claims that the district court erred when during trial of the excessive force claim—the only claim the judge allowed to go to the jury—he sustained defendants' objection to questions on cross-examination of Rodriguez concerning the charges Rodriguez had in mind when he first tried to arrest Davis.[10] Although

---

9. Davis was later charged with resisting arrest. See supra note 2.

10. The relevant exchange at trial went as follows:

"Q. Okay. Then you were [e]ffecting an arrest of a person you reasonably believe had committed an offense?
A. That's correct.
Q. Okay. What offense?
Mr. Szerejko [defendants' attorney]: Objection, Your Honor, relevance. . . . "

the "district court has wide discretion in controlling the admissibility of testimony and other evidence," *Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir.1995), we believe that under the circumstances here the court abused its discretion when it denied Davis the opportunity to ask Rodriguez about those charges.

Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Davis's excessive force claim was the only claim remaining at the time Davis cross-examined Rodriguez. Defendants rely on *Habiger v. City of Fargo,* 80 F.3d 289, 298 n. 8 (8th Cir.1996), in which the Eighth Circuit observed that it was "inclined to believe that the presence of actual or arguable probable cause is irrelevant to the objective reasonableness of the force used to effect an arrest." Defendants argue that the legality of Davis's arrest is irrelevant to whether the force used to effect it was excessive.

Defendants misunderstand the relevance of Davis's question to Rodriguez. The Supreme Court has explained that *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court has also explained that in determining whether the force used in a particular

case was unreasonable, courts should look "to the facts and circumstances of each particular case," including, among other things, "the severity of the crime at issue." Id. at 396, 109 S.Ct. 1865; *Soares v. Connecticut,* 8 F.3d 917, 921 (2d Cir.1993). Davis's question was directly relevant to the excessive force claim because the reasonableness of the force used was partly dependent on the crime in question. We thus hold that the court's decision to preclude that line of questioning was an abuse of discretion.

■ Of course, a new trial should be granted only "if the court's abuse of discretion clearly prejudiced the outcome of the trial." *Annis v. County of Westchester,* 136 F.3d 239, 247 (2d Cir.1998). It is arguable that by itself, the court's error on this evidentiary question might not have been significant enough to warrant a new trial on the excessive force claim. However, that error must be seen in the context of the court's prior error in granting JMOL on the unconstitutional false arrest claim. It must also be noted that the court did not instruct the jury that it could find in Davis's favor on the excessive force claim even if the arrest was lawful. Although the court was not specifically asked to give that instruction, it might have helped limit the prejudicial effect of the erroneous JMOL. Viewed together, these facts create a real possibility that the jury was unduly influenced to find against Davis. In order for the jury to rule for Davis on the excessive force claim, it had to believe his story as to what he had been doing when Rodriguez ordered him to approach his cruiser. By wrongly removing the unconstitutional false arrest claim from the trial and rejecting Davis's attempts right after that to ask Rodriguez about the charges he had in mind, the jury may have incorrectly concluded that the court disbelieved Davis's version of the events. Such

a suggestion would have been fatal to Davis's excessive force claim. Under these unusual circumstances, we vacate the judgment for defendants and order a new trial also on Davis's excessive force claim.[11]

### F. The jury instructions

Davis argues that the district court's instruction to the jury that "[y]ou are further instructed that under the law one cannot resist arrest, whether or not . . . it is legal or illegal," was misleading and, in accordance with his request, the court should have added: "The fact that a person is under arrest does not require that person to submit to egregiously unlawful police conduct during the course of the arrest."

 We do not review portions of jury instructions in isolation, but rather consider them in their entirety to determine whether, on the whole, they provided the jury with an intelligible and accurate portrayal of applicable law. *United States v. Weintraub*, 273 F.3d 139, 151 (2d Cir. 2001). Here, any potential prejudice produced by the complained of instruction was nullified by the court's explanation of the excessive force claim. The court instructed the jury that "[i]f you find from the evidence in the case that the plaintiff has proved that defendants used more force than would have appeared to a reasonable officer in similar circumstances to have been necessary to accomplish the lawful purposes intended, then you may find that the defendants used excessive force against the plaintiff, contrary to the constitution." The court also explained to the jury that an arrest "can be accomplished by the simple placing the hand on the shoulder to restrain an individual and ad-

vise them that they're under arrest." The court told the jury that "if [Davis] was openly docile and completely submissive to being arrested and he was subjected to substantial force, then he would have a legitimate claim." The court thus made it clear that if the jury believed Davis's story including that he had docilely submitted to the blows of Rodriguez and Rivera, the jury would have to find the officers liable for the unconstitutional use of excessive force. We find no reversible error in the court's instruction to the jury.

### III. Conclusion

For the reasons stated above, we affirm (1) the district court's grant of summary judgment for the Hospital and Gordon; and (2) the court's grant of JMOL to Rodriguez and Rivera on Davis's illegal search claim. Also, we conclude that the court did not commit reversible error in its instruction to the jury on excessive force. We reverse, however, the court's decision granting JMOL on Davis's unconstitutional false arrest claim and find reversible error in the court's decision to preclude questions concerning Rodriguez's intended charges. Accordingly, we vacate the judgments in favor of Rodriguez and Rivera on the unconstitutional false arrest and excessive force claims and remand for further proceedings not inconsistent with this opinion.

---

11. Davis also argues that the court committed reversible error when it admitted evidence of his prior possession of a concealed weapon. Davis did not initially object to the line of questioning, moving for a mistrial only on the

following day. Because we are already vacating the judgment for defendants on Davis's excessive force claim, we need not address this argument.